**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**RAYMOND LYNCH**

**v.** **C.A. No. 06 - 409 T**

**C/O PELISSEY**

**Report and Recommendation**

Jacob Hagopian, Senior United States Magistrate Judge

Plaintiff Raymond Lynch, an inmate confined at the Rhode Island Department of Corrections ("RI DOC)"), filed this action pursuant to 42 U.S.C. § 1983 alleging a deprivation of his Fourteenth Amendment due process rights. Plaintiff names as a defendant C/O Pelissey, a correctional officer at the RI DOC.

This matter is before the Court on motion of defendant Pelissey to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff has objected thereto. This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for a report and recommendation. For the reasons that follow, I recommend that the defendant's motion to dismiss be granted.

**Background**

The following are the factual allegations from the Amended Complaint, which are taken as true for purposes of the instant motion:

On January 20, 2006, defendant correctional officer Pelissey

issued a disciplinary citation to the plaintiff due to his alleged inappropriate leering at a female instructor. A disciplinary hearing thereafter commenced and found the plaintiff guilty of the disciplinary charge. As a sanction, plaintiff spent thirty days in punitive segregation with a thirty day loss of good time credit. Plaintiff unsuccessfully appealed the guilty finding to the warden.

As a result of the infraction, plaintiff was designated a SRG -1 status inmate (security risk group) and has been labeled a sexual predator.[1] Additionally, a classification board thereafter classified the plaintiff as a "C" status inmate and ordered him to be confined in the High Security Center.

Plaintiff contends in his Amended Complaint that the disciplinary charges were unfounded: that he did not stare at the female instructor through the window as she taught a class; that Officer Pelissey was stationed by her door while she exited; that he watched as the female instructor exited the classroom; and that he stayed 10 to 12 feet behind Officer Pelissey as she exited.

Plaintiff filed suit seeking relief. Plaintiff alleges that Officer Pelissey violated his Fourteenth Amendment Due Process rights and Article I, Section 2 of the Rhode Island constitution.

---

[1] Although in his Amended Complaint plaintiff appears to cast his label as a sexual predator on this incident with the instructor, the Court notes that Lynch stands convicted of three counts of first-degree sexual assault and two counts of second-degree sexual assault. State v. Lynch, 854 A.2d 1022 (R.I. 2004).

Additionally, plaintiff asserts that Pelissey violated the Morris rules.

Defendant Pelissey has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff has objected thereto.

## Analysis

**A. Rule 12(b)(6) Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of actions which fail to state a claim upon which relief can be granted. In ruling on a motion filed under Rule 12(b)(6), the court must "accept the well pleaded averments of the ***complaint as true, and construe these facts in the light most favorable to the [plaintiff]." Chongris v. Board of Appeals, 811 F.2d 36, 37 (1st Cir. 1987). A Rule 12(b)(6) motion will only be granted when, viewed in this manner, it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-6 (1957).

Under a Rule 12(b)(6) motion, "a reviewing court is obliged neither to credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation, nor to honor subjective characterizations, optimistic predictions, or problematic suppositions." United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992). Unverifiable conclusions, not supported by the stated facts, deserve no deference. Id. Thus, in ruling on

the motion to dismiss, the pertinent inquiry is whether plaintiff's complaint sets forth sufficient factual allegations which, if proven, would support his claims of a deprivation of federal rights.

**B. 42 U.S.C. § 1983**

Plaintiff has brought suit under 42 U.S.C. § 1983. Section 1983 provides, in pertinent part:

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.

In order to maintain a section 1983 action, the conduct complained must be committed by a "person" acting under color of state law and the conduct must have deprived the plaintiff of a constitutional right or a federal statutory right. Gomez v. Toledo, 446 U.S. 635, 640 (1980); see also, Baker v. McCollan, 443 U.S. 137 (1979) (constitutional deprivations); Maine v. Thiboutot, 448 U.S. 1 (1980) (statutory deprivations). Here, there is no dispute that the named defendant acted under the color of law. However, the defendant asserts that the facts fail to allege a violation of the plaintiff's constitutional rights. I agree.

**1. Disciplinary Segregation**

Plaintiff first claims that his confinement in disciplinary segregation for thirty days violated his Fourteenth Amendment due process rights. The Fourteenth Amendment provides that a state shall not deprive any person of life, liberty, or property without due process of law. See U.S. CONST. amend. XIV. Here, Lynch alleges an interference with a "liberty" interest due to his temporary confinement in segregation.

Generally, a liberty interest may arise from the constitution itself, by reason of guarantees implicit in the word "liberty," see, e.g., Vitek v. Jones, 445 U.S. 480, 493-494 (1980)(liberty interest in avoiding involuntary psychiatric treatment and transfer to a mental institution), or it may arise from an expectation or interest created by state laws or policies, see, e.g., Wolf v. McDonnell, 418 U.S. 539, 556-558(1974)(liberty interest in avoiding withdrawal of state-created good-time credits). However, the United States Supreme Court has made clear that the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement. Meachum v. Fano, 427 U.S. 215, 225 (1976)(there is no liberty interest arising from the due process clause itself in transfer from low to maximum security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the state to impose").

Thus, inmates alleging an infringement of a liberty interest following a placement in segregation must look to expectations or interests created by state laws or policies.

In Sandin v. Connor, 515 U.S. 472 (1995), the Supreme Court placed significant limitations on inmates seeking to invoke due process protections from interests or expectations created by state law or policies. The Supreme Court held that

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless impose *atypical and significant hardship* on the inmate in relation to the ordinary incidents of prison life. Id. at 484 (emphasis supplied).

Applying this "atypical and significant hardship" standard, the Supreme Court in Sandin found that an inmate's placement in segregation for thirty days did not implicate a liberty interest because it did not "present a dramatic departure from the basic conditions of [the inmate's] sentence." Id. at 485. Indeed, the Court found that "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." Id. at 486.

Thus, after Sandin, the initial inquiry for claims made by an inmate alleging a violation of the due process clause is whether the deprivation complained of is "atypical and significant" in relation to the ordinary instances of prison life. Here,

plaintiff's temporary placement in punitive segregation for thirty days is not "atypical and significant." See id. Therefore, plaintiff's allegations regarding his placement in segregation fail to state a claim upon which relief can be granted under the Fourteenth Amendment due process clause and should be dismissed. I so recommend.

**2. Classification**

Next, plaintiff claims that his classification as a "SRG-1" inmate, a "C" status inmate, and/or his designation as a "sexual predator" somehow infringes upon his due process rights. He is mistaken.

Inmates challenging a prison's classification face the same hurdle as inmates challenging disciplinary proceedings. The inmate must demonstrate that a liberty interest is implicated under the "atypical and significant hardship" standard. See e.g. Wilkinson v. Austin, 545 U.S. 209 (2005).

In Austin, inmates challenged their classification to a super-maximum facility. The super-maximum facility confined inmates to their constantly illuminated cell twenty-three hours a day. Incarceration at this particular facility was "synonymous with extreme isolation." Id. at 214-15. Inmates are deprived of almost any environmental or sensory stimuli and of almost all human contact. Id. The Supreme Court found that the nature of the deprivation was "atypical and significant," pointing out that

conditions were harsh, the duration of confinement at the facility was indefinite, and that placement at this particular super-maximum facility disqualifies an otherwise eligible inmate from parole considerations. Id. at 223-24. The Court noted that any of "these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context." Id. at 224.

Here, no such extreme conditions are alleged. Plaintiff's prison classifications, as unpleasant or undesirable as they may be, standing alone, do not rise to the level of an "atypical and significant hardship" in relation to the ordinary instances of prison life. Therefore, this claim is without merit and should be dismissed. I so recommend.

**3. Restoration of good time credit.**

To the extent that plaintiff may be seeking a restoration of good time credit, plaintiff may not do so in an action brought pursuant to 42 U.S.C § 1983. Preiser v. Rodriguez, 411 U.S. 475 (1973).

**C. State Law and Morris Rules Claims**

Finally, to the extent that plaintiff asserts claims under state law and the Morris Rules, such claims should be dismissed without prejudice to plaintiff filing them in an appropriate state court. See 28 U.S.C. § 1367(c); Doctor v. Wall, 143 F. Supp. 2d 203 (D.R.I. 2001)(Morris rules).

## Conclusion

For the reasons stated above, I recommend that the defendant's motion to dismiss be granted. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten days of its receipt. Fed R. Civ. P. 72(b); LR Cv 72(d). Failure to filed timely, specific objections to this report constitutes waiver of both the right to review by the district court and the right to appeal the district court's decision. United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1986) (per curiam); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

Jacob Hagopian
Senior United States Magistrate Judge
Date: 5/10/07